## T. J. BELL v. THE STATE.

### No. 1905. Decided November 23, 1898.

**1. Theft—Conspiracy—Charge as to Accomplice Testimony.**

On a trial for theft of cattle, where the matter of the conspiracy between the defendant and an accomplice depended alone upon the accomplice's testimony, Held, that it was error to charge the jury that the witness "was an accomplice according to his own testimony." Such a charge was, under the facts in the case, a charge upon the weight of testimony, since its effect was to tell the jury that the accomplice's testimony as to the conspiracy (which was denied by defendant) was true.

**2. Same—Charge as to Accomplice Testimony—Better Practice.**

While it is usual, where the matter of the witness being an accomplice does not appear to be controverted, for the court to instruct the jury that such witness is an accomplice, the better practice in all cases is to instruct the jury what it takes to constitute an accomplice, and then leave them to find whether or not the witness is an accomplice.

**3. Same—Correct Mode of Charging as to.**

In charging upon accomplice testimony the court should not tell the jury that if they believed the testimony of the accomplice had been corroborated they should find the defendant guilty, but in some method they should be clearly told that if they believed the accomplice's testimony to be true, and it showed or tended to show defendant's guilt of the offense, still they could not convict unless they further believed that there was other testimony outside of the accomplice's testimony tending to connect defendant with the commission of the offense.

**4. Principals—Charge.**

On a trial for theft of cattle, where an accomplice testified to the conspiracy to commit the theft, and that, though defendant was not present at the time of the taking, he subsequently received the cattle and assisted in driving them to his ranch, Held, a charge which in effect instructed the jury that defendant would be guilty as a principal under such a state of case is erroneous. In order to make a party a principal, under our statute, where he is not present at the commission of

the offense, he must have been keeping watch to prevent the interruption of the person committing it, or must at the time have been doing some other act in aid of or encouragement of the person actually committing the offense. Following Dawson v. State, 38 Texas Criminal Reports, 50.

APPEAL from the District Court of Hardin. Tried below before Hon. L. B. HIGHTOWER.

Appeal from a conviction for the theft of two head of cattle; penalty, two years imprisonment in the penitentiary.

The important facts of the case are sufficiently summed up in the opinion.

Defendant presented two special requested instructions, as follows, viz: "You are further charged, that a conspiracy to commit crime is always a question of fact to be established like any other fact to the satisfaction of the jury beyond a reasonable doubt, and can not be established by the uncorroborated testimony of a coconspirator, and if you have a reasonable doubt as to whether the defendant conspired with John Pelt to take the cattle described in the indictment, you will acquit the defendant, and if the testimony of John Pelt has not been corroborated on the question of conspiracy as charged you in the general charge of the court, or if you have a reasonable doubt on this point, you will find the defendant not guilty."

"You are further charged, that a conspiracy to commit crime is always a question of fact to be established like any other fact to the satisfaction of the jury beyond a reasonable doubt, and can not be established by the uncorroborated testimony of a coconspirator."

These instructions were refused by the court.

*W. L. Douglass* and *Lanier, Kirby & Martin,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of cattle, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

The theory of the State, mainly supported by the testimony of Pelt, was that the two yearlings in question were taken by Pelt (an accomplice) and the defendant from the range in pursuance to a conspiracy, were driven into the pasture of appellant, and the next day they were driven by appellant to Beaumont, some twenty miles, and there sold. The testimony tending to corroborate the State's testimony of appellant's connection with the offense was that he was acquainted with the cattle of Gus Mobray, the alleged owner, and that these were yearlings sucking his cows, and the fact that he sold the yearlings to McFadden in Beaumont, and stated to him that he raised said yearlings. The theory of the defendant was that he and Pelt were on the range together; that he had some cattle of his own in his possession, gathered just before Pelt came up, and had started with them to his pasture, when Pelt

suggested that he had two yearlings of his own that he would put in the herd, and get him to drive to Beaumont and sell for him; that thereupon appellant stopped the herd, and waited for Pelt, who went to some cattle in the prairie within view (as he stated, about half a mile distant), cut out two yearlings, and drove to the herd; and that they then drove the entire herd to the pasture of appellant; that appellant, while he knew that Pelt had no cattle in that range, yet had no reason to believe that he was stealing said cattle, and that he received them and drove them to his pasture and thence to Beaumont and sold them; that, if he had any guilty connection with said cattle at all, it was not as an original taker, but at most only as a receiver after the said animals had been stolen. He denied any conspiracy between himself and Pelt to steal the cattle, and also testified, if he had stated to McFadden when he sold the cattle that he had raised them, it was only in a general way, as he had raised most of the fifteen head he sold him. On this presentation of the case the court gave a charge on theft generally, and also gave the following charge on theft in pursuance of a conspiracy: "But I charge you that if you find from the evidence that the defendant and the said Pelt had entered into a conspiracy to steal unbranded yearlings on the range, and in pursuance of such conspiracy they went in search of such cattle, and the said Pelt found the cattle mentioned in the indictment, drove the same to where defendant was, and together they fraudulently took and penned such cattle, then the act of Pelt in first taking the cattle would in law be the act of the defendant with the original taking." The court also gave the usual charge defining who were accomplices, and then gave the following charge: "Now, you are charged that the witness John Pelt was an accomplice according to his own testimony, as that term is defined in the foregoing instruction; and you are further instructed that you can not find the defendant guilty upon his testimony, unless you are satisfied that the same has been corroborated by other evidence tending to establish that the defendant did in fact commit the offense." Appellant objected to the charge on conspiracy on the ground that it made appellant a principal whether he was present or not at the commission of the offense; and he also objected to that part of the charge on accomplice testimony which stated to the jury that Pelt was an accomplice on his own testimony, and, in addition, he asked special charges, which he claims would have the effect to cure the errors of the court. One requested charge instructed the jury that the conspiracy could not be established alone on the uncorroborated testimony of a coconspirator. We understand appellant's contention to be that the court's charge on accomplice testimony was on the weight of the evidence,—that is, that the matter of conspiracy between Pelt and appellant depended alone on Pelt's testimony, which was denied by appellant; that, on the doctrine of accomplices, Pelt might be an accomplice with the appellant by virtue of being a coconspirator with him, and that, consequently, the effect of the court's charge was to tell the jury that it was true, as had been testified by Pelt, that he was a coconspirator with appellant; that this was upon

the weight of the testimony, and that the only possible way to have healed the error of the court was by giving the requested charge, in which the jury were told that, as to a conspiracy, the witness Pelt should be corroborated. In our opinion, this contention of appellant is correct. As we view the record, the jury were liable to regard Pelt as an accomplice by virtue of his testimony regarding the conspiracy between himself and appellant; and then to be told, in effect, that Pelt's testimony as to the conspiracy was true, was a charge upon the weight of the testimony. We doubt whether this error could have been cured at all. If it could have been, the charge asked by appellant might have cured it. We would further observe in this connection that it is usual with judges, where the matter of a witness being an accomplice does not appear to be controverted, to instruct the jury that such a witness is an accomplice. In our view, much the better practice in all cases is to instruct the jury what it takes to constitute an accomplice, and then leave them free to find whether or not such a person is an accomplice.

Another objection is that the charge as framed by the court was upon the weight of the testimony because it assumed as true the truth of the accomplice's testimony throughout, and then only required that the jury find that the State had introduced other testimony tending to corroborate the same. We are inclined to the view that the charge is amenable to this criticism. In every case where an accomplice testifies, the judge should be careful not to assume in any manner the truth of the accomplice's testimony, but leave the truth of that, as well as all other evidence, to be found by the jury. For instance, the court should not tell the jury that, if they believed that the testimony of the accomplice had been corroborated, to find the defendant guilty, but in some method they should be clearly told, if they believed the accomplice's testimony to be true, and that it showed or tended to show that defendant was guilty of the offense, still they could not convict unless they further believed that there was other testimony, outside of the accomplice testimony, tending to connect defendant with the commission of the offense charged. The charge in this case, we believe, failed properly to do this.

With reference to the court's charge on conspiracy, we are led to make the following observations: No doubt the court apprehended some difficulty in framing a proper charge on the doctrine of principals in case the jury should believe the testimony of appellant and his son to the effect that they were not immediately present when the theft was committed; and, in order to solve said difficulty, gave the charge on conspiracy in which the jury were, in effect, instructed, if they believed there was a prior conspiracy existing between Pelt and defendant to steal the yearlings, and the theft was committed in pursuance of such conspiracy, by Pelt, when defendant was not immediately present, but that he subsequently received the yearlings, and assisted in driving the same to his ranch, in such case he would be guilty as a principal. In Dawson v. State, 38 Texas Criminal Reports, 50, the doctrine of principals as defined by our statute was taken up and discussed, and it was

there held that our statute defined who were principals and who were accomplices, and drew the dividing line between them, and that we would adhere to the rule laid down by the statute. Under the charge as given, the jury might entertain the view that, although appellant was not present, and not then doing some act in aid of Pelt, who was actually committing the offense, he would be guilty; whereas, if the court had instructed the jury in accordance with the statute on the doctrine of principals, it would have been all that was required, and there would have been no possible confusion. If defendant was present, and doing some act to encourage or aid Pelt, who was actually committing the theft, he would be a principal. Or if he was not actually present, but was keeping watch, so as to prevent the interruption of the person engaged in committing the offense, or was then doing some other act in aid of or encouragement of the person actually committing the offense, he would be a principal. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.